**E-FILED**
Tuesday, 03 October, 2006  03:30:54 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 218, SHEET METAL WORKERS LOCAL 218 PENSION FUND, SHEET METAL WORKERS NATIONAL BENEFIT FUNDS, SHEET METAL WORKERS LOCAL 218 APPRENTICESHIP  FUND, SHEET METAL WORKERS HEALTH AND WELFARE FUND, SHEET METAL WORKERS LOCAL 218 FRINGE BENEFIT FUNDS, SHEET METAL WORKERS LOCAL 218 INDUSTRY FUND | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. ) |
| C&K MECHANICAL CONTRACTORS, INC., | ) ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiffs, SHEET METAL WORKERS LOCAL 218, SHEET METAL WORKERS LOCAL 218 PENSION FUND, SHEET METAL WORKERS NATIONAL BENEFIT FUNDS, SHEET METAL WORKERS LOCAL 218 APPRENTICESHIP FUND, SHEET METAL WORKERS LOCAL 218 HEALTH AND WELFARE FUND, SHEET METAL WORKERS LOCAL 218 FRINGE BENEFIT FUNDS, SHEET METAL WORKERS LOCAL 218 INDUSTRY FUND, by and through their attorneys, Cavanagh & O'Hara, complaining of the Defendant, C&K MECHANICAL CONTRACTORS, INC., and alleges as follows:

1.     This action arises under the Employee Retirement Income Security Act of 1974, as amended U.S.C. Title 29, Section 1145.

2.     The Plaintiff Funds are employee benefit funds administered pursuant to the terms and provisions of the  Declarations of Trusts creating said Funds as are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947

1

(as amended), and the Employee Retirement Income Security Act of 1974 (ERISA), (as amended), 29 U.S.C. §1001 et seq  and other applicable State and Federal Laws.  The address of the Plaintiff Funds is Sheet Metal Workers Local #218 Fringe Benefit Funds, 2855 Via Verde, Springfield, Illinois.

3.     That the Defendant is an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C. Sections 1002(5), (11), (12) and (14).  Defendant employs individuals who are members of, and represented by, Sheet Metal Workers Local 218, a local labor organization, and has agreed to provide participation in the Plaintiff Funds, so as to provide for benefits for employees of Defendant.

4.     The Defendant's address is 902 Surrey Court, Mahomet, Illinois 61853.

5.     The Defendant is bound by a collective bargaining agreement with SHEET METAL WORKERS LOCAL 218 which provides for participation in the various Plaintiff Funds as shown by Plaintiffs' **Exhibit A** attached hereto in pertinent part and made a part hereof.

6.     Pursuant to ERISA (U.S.C. Title 29, Section 1145), the Defendant is required to make contributions to Plaintiffs in accordance with the terms and conditions of the Plaintiffs' Agreements and Declarations of Trust, and to pay liquidated damages in the event said contributions are not timely made.  The Trust Agreement in pertinent part  is attached hereto and made a part hereof as **Exhibit B.**

7.     Pursuant to the Collective Bargaining Agreement, attached hereto as **Exhibit A**, and the Agreement and Declaration of Trust, attached hereto as **Exhibit B**, the Plaintiffs are authorized and empowered to examine the payroll books and records of the Defendant to determine whether the employer is making full payment as required under the Collective Bargaining Agreement, Participation Agreement and Trust Agreements.

8.     Pursuant to such Collective Bargaining Agreement and Agreements and Declarations of Trust, the Funds engaged Levinson, Simon & Sprung to examine the payroll records of the Defendant.

9.     That pursuant to such Collective Bargaining Agreement and Agreements and Declarations of Trust, said Levinson, Simon & Sprung have determined that Defendant owes the Plaintiffs $31,797.52 for outstanding fringe benefit contributions, plus liquidated damages of $3,179.75, and audit costs of $983.47, for a total due of $35,960.74, for the period of January 1, 2003 through December 31, 2005. The audit report is attached hereto and made a part hereof as **Exhibit C**.

10.    That Plaintiffs have made demands upon Defendant for the audit liabilities due and liquidated damages as a consequence of late payments, but Defendant has refused to satisfy said demands. The demands are attached hereto and made a part hereof as **Exhibit D.**

11.    That pursuant ERISA, 29 U.S.C. §1132(g)(2), and to the terms of the Agreement and Declaration of Trust (**Exhibit B**), the Defendant is liable for reasonable attorney fees and court costs and all other reasonable expenses incurred by Plaintiffs in the collection of delinquent contributions and liquidated damages.

12.    Attached hereto and incorporated herein as **Exhibit E** is the Affidavit of Britt W. Sowle in support of his request for attorney fees in the amount of $ 1,537.00  incurred in the prosecution of this matter.

WHEREFORE, Plaintiffs pray as follows:

A.     That Judgment be entered in favor of the Plaintiffs and against the Defendant for audit liability due for the period from January 1, 2003 through December 31, 2005, in the amount of  $31,797.52, plus liquidated damages of $3,179.75, and audit costs of $983.47 for a total due of $35,960.74; and further, any unpaid contributions, and liquidated damages unpaid at the time Judgment is entered.

B.     That Defendant be specifically required to perform and continue to perform all its obligations to the Plaintiff Funds;

C.     That Defendant be decreed to pay to the Plaintiff Funds their reasonable attorneys fees in the amount of $1,537.00,  as provided by ERISA, 29 U.S.C. Section 1132(g)(2).

3

D.     That Defendant be decreed to pay all costs attendant to the cost of these proceedings; and

E.     That Plaintiffs have such other and further relief as by the Court may be deemed just and equitable, all at Defendant's cost.

SHEET METAL WORKERS LOCAL 218, et al.,
Plaintiffs,


By:_____s/ Britt W. Sowle_____
         BRITT W. SOWLE
         **CAVANAGH & O'HARA**
         Attorneys for Plaintiffs
         1609 North Illinois Street
         Swansea, Illinois 62226
         Telephone:     (618)222-5945
         Facsimile:     (618) 222-6755
         britt@cavanagh-ohara.com

S:\c&o\Files\SMW 218\Deliq\C&K Mechanical Contractors, Inc\Complaint.ald.wpd

**E-FILED**
Tuesday, 03 October, 2006  03:31:14 PM
Clerk, U.S. District Court, ILCD



**COMMERCIAL AGREEMENT**

Between the

SHEET METAL WORKER'S INTERNATIONAL ASSOCIATION

LOCAL UNION #218C

and

MID STATE SHEET METAL AND AIR CONDITIONING
CONTRACTORS ASSOCIATION

for

Champaign, Coles, Cumberland, Douglas, Ford, Moultrie, Piatt,
Shelby and Vermilion Counties in Illinois

TERM OF CONTRACT

July 12, 2001 - July 31, 2004

EXHIBIT
A

wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid to the employees employed on such work in the home shop or sent to the jobsite.

**SECTION 3.** The provisions of Section 2 of this Article, Section 2 of Article II, and Section 1 of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
6. Mixing (attenuation) boxes
7. Plastic Skylights
8. Air diffusers, grilles, registers
9. Sound attenuators
10. Chutes
11. Double-wall panel plenums
12. Angle rings

**SECTION 4.** The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings for high pressure systems.

**SECTION 5.** Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen, preapprentice and classified sheet metal workers hired outside the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

**SECTION 6.** When the Employer has any work specified in Article I of this Agreement to be performed outside the area covered by this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while

employed in that area, and the Employer shall be otherwise governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

**SECTION 7.** In applying the provisions of Sections 2, 5, and 6 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

**SECTION 8.** Welfare benefit contributions shall not be duplicated.

When sheet metal workers are employed temporarily outside the jurisdiction of their home local union, the parties signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local union.

The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

**SECTION 9.** Wages at the established rates specified herein shall be paid by check or cash in the shop or on the job at or before quitting time on Friday of each week, and no more than seven (7) days' pay will be withheld. However employees when discharged shall be paid in full. **\*Refer to Addendum #5, Section 9c, Page 24**

**SECTION 10.** Journeymen, apprentice, preapprentice and classified sheet metal workers who report for work by direction of the Employer, and are not placed to work, shall be entitled to two (2) hours' pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

**SECTION 11.** Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.

**SECTION 12(a).** Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

4

5

(b). The Employer shall pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) seven cents ($0.07) per hour for each hour worked on and after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted to IFUS, 4201 Lafayette Center Drive, Chantilly, Virginia 22021-1209, or for the purpose of transmittal, through Mid State Sheet Metal & Air Conditioning Contractors Association.

(c). The IFUS shall submit to the Sheet Metal Workers' International Association not less often than semi-annually written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS shall include in such written report a financial statement attested to by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the Sheet Metal Workers' International Association upon written request.

(d). Grievances concerning use of IFUS funds for purposes prohibited under Section 12(a) or for violations of other subsections of this Section may be processed by the Sheet Metal Workers' International Association directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator shall be selected by the Co-Chairmen of the National Joint Adjustment Board. The Arbitrator shall be authorized to impose any remedial order he deems appropriate for violation of this Section, including termination of the Employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section, (Section 12, Article VIII), and no other.

SECTION 13(a). Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay to the Betterment of Industry Fund, 2210 Carlisle, Champaign, IL 61821, (the local industry fund), eight cents ($0.08) per hour for each hour worked on or after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made monthly on or before the 20th day of the succeeding month.

(c). The local industry fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the local industry fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements. Further specific detailed information in regard to local industry fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(d). Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section shall be handled under the provisions of Article X of this Agreement. The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

SECTION 14. Effective as of the date of this Agreement the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) twelve cents ($0.12) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or for purposes of collection and transmittal through (*See Addendum #8, Article XI, Section 6, Page 30).

Effective as of the date of this Agreement the Employers will contribute to the National Energy Management Institute Committee (NEMIC), a jointly administered trust fund, three cents ($0.03) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or for the purposes of collection and transmittal through (*See Addendum #8, Article XI, Section 7, Page 30).

Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupational Health Institute Trust (Institute) two cents ($0.02) per hour for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. Payment shall be made on or before the 20th of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or for the purposes of collection and transmittal through. (*See Addendum #8, Article XI, Section 8, Page 30).

The parties agree to be bound by the separate Agreements and Declarations of Trusts establishing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In

addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements.

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

## ARTICLE IX

SECTION 1. Journeymen, apprentice, preapprentice and classified sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools.

SECTION 2. Journeymen, apprentice, preapprentice and classified sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at

each meeting. The local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board.* Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairmen of the National Joint Adjustment Board.

SECTION 4. Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.) *SEE PAGE 10

SECTION 5. A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

SECTION 6. In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means

B. PAY AFTER QUITTING: When an employee quits of his own accord he shall wait for the regular pay day for his wages.

C. No more than seven (7) consecutive calendar days will be withheld.

## SECTION 10. SHOW TIME:

A. Day begins at 8:00 a.m.; work any part till 10:00 a.m.; receives two (2) hours pay.

B. Day begins at 8:00 a.m.; work after 10:00 a.m.; leave before 12:00 p.m.; receives four (4) hours pay.

C. Day begins at 8:00 a.m.; work after 12:30 p.m.; leave before 2:30 p.m.; receives six (6) hours pay.

D. Day begins at 8:00 a.m.; work after 2:30 p.m.; leave before 4:30 p.m.; receives eight (8) hours pay.

## SECTION 15. FILING DATE FOR REPORTS & PAYMENTS: The payments and reports of the following local funds shall be sent to the National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar months in which the hours were worked.

A. APPRENTICE TRAINING CONTRIBUTION: The Employer shall pay the amount per hour as per the attached wage and fringe benefits detail sheet for each hour worked by all employees of the Employer covered by this Agreement to "The Sheet Metal Workers' Local #218 Joint Fund for the Training of Apprentice and Journeymen."

1. A "Joint Apprentice and Journeyman Training Committee" shall have the sole custody, ownership, and administration of this Fund.

2. Sheet Metal Workers' Local #218 agrees to designate and to continue to designate three (3) trustees to administer the "Joint Apprentice and Journeyman Training Trust."

3. A yearly audit of the "Joint Apprentice and Journeyman Training Trust" will be available at the Union Hall for inspection by any individual covered by this contract, Sheet Metal Worker of Local #218, and member of Mid-State Sheet Metal and Air Conditioning Contractors Association.

4. The Joint Fund (see ARTICLE XIII) by majority vote, shall determine the needs including, but not in limitation thereof, the funds, equipment, and the personnel for the proper functioning of the Training Program.

5. If in the administration of the Training Program, the Committee shall be unable to arrive to a decision of any question arising, the subject in controversy shall be submitted to a third party mutually agreed upon. The decision of such named person shall be binding upon all parties.

6. Local #218 will enforce collection of Training Fund.

B. BETTERMENT OF INDUSTRY FUND: The Employer shall pay the amount per hour as per attached wage and fringe benefits detail sheet per hour for each hour worked by all employees of the Employer covered by this

Agreement to the "Betterment of the Industry Fund" of the Mid-State Sheet Metal and Air Conditioning Contractors Association.

1. The Mid-State Sheet Metal and Air Conditioning Contractors Association shall have the sole custody, ownership, and administration of the Betterment of Industry Fund.

2. The rate of the contributions to the "Sheet Metal Workers' Local #218 Joint Training Fund" and the "Betterment of Industry Fund" of the Mid-State Sheet Metal and Air Conditioning Contractors Association shall be reviewed and/or adjusted annually to meet the anticipated needs of the purposes set forth in I and II of this SECTION. The review and adjustment shall be accomplished on or before November first (1st) of each year, effective January first (1st) of the following year.

C. NATIONAL INDUSTRY FUND: The Employer shall pay and transmit the amount per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal and Air Conditioning Contractors "National Industry Fund of the United States" in accordance with SECTION 12.

D. INTERNATIONAL TRAINING INSTITUTE: The Employer shall pay and transmit the amount per hour as per attached wage and fringe benefits detail sheet to the "International Training Institute" for the Sheet Metal and Air Conditioning Industry in accordance with SECTION 14 of the SFUA.

## SECTION 16. LOCAL PENSION: The Employer shall pay and transmit the amount per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal Workers' Local #218 "Pension Trust Fund". The payment shall be sent to the National City Bank, Champaign, Illinois, on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

## SECTION 17. NATIONAL PENSION: The Employer shall pay and transmit the amount per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal Workers "National Pension Fund". The payment shall be sent to the National City Bank, Champaign, Illinois, on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

## SECTION 18. HEALTH & WELFARE: The Employer shall pay and transmit the amount per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal Workers' Local #218 "Health & Welfare Trust Fund." The payment and report shall be sent to the National City Bank, Champaign, Illinois, on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

## SECTION 19. SASMI:

The Employer shall make monthly payments of an amount equal to three percent (3%) of the Gross Earnings of each Employee subject to this Agreement to the National Stabilization Agreement of Sheet Metal Industry Trust Fund (SASMI). Gross Earnings, for purposes of this Agreement, shall mean (a) total wages paid to an Employee by the Employer which are reportable by the Employee for Federal Income Tax purposes, and

(b) any and all contributions paid by such Employer on behalf of the Employee to a pension and/or health and welfare fund.

The Employer agrees to adopt the National Stabilization Agreement of Sheet Metal Industry Agreement and Declaration of Trust as presently constituted and as the same may be amended from time to time, to be bound by all Rules and Regulations of the Plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time. .

### Section 20. SHEET METAL WORKERS INTERNATIONAL SCHOLARSHIP FUND:

The Employer will contribute to the Sheet Metal Workers' International Scholarship Fund one cent ($0.01) per hour for each hour worked by each employee of the employer covered by this Agreement. The payment and report shall be sent to National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

### Section 21. TEAM FUND:

The Employer will contribute to the TEAM Fund two cents ($0.02) per hour for each hour worked by each employee of the employer covered by this Agreement. TEAM is a joint labor-management committee serving the construction industry in the Champaign County area. The payment and report shall be sent to National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

If at a later date, the Business Manager determines that the TEAM committee has become ineffective, the Business Manager, at his sole discretion, may withdraw from participating to the TEAM Fund. In the event that TEAM Fund contributions are discontinued, the existing wage scale shall be increased by two cents ($0.02) per hour.

### Section 22. PAL FUND:

The Employer shall pay and transmit the amount per hour as per the attached wage and fringe benefits detail sheet to the P.A.L. Fund, on the employees who have voluntarily authorized their employer to do so. The Employer shall retain a written copy of the employee's Voluntary Authorization Form for P.A.L. contributions. The payment shall be sent to the National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

### Section 23. 401(k) PLAN:

The parties to this agreement have mutually agreed to allow participation by the employees in an existing 401(k) plan which provides for 100% voluntary contributions. The maximum number of voluntary contribution participation levels shall be restricted to three (i.e. $1.00, $2.00, $3.00).

When an existing 401(k) plan is selected, the employee may have their employer withhold one of the three options available from their base rate. The Employer shall send the payment to the National City Bank, Champaign, Illinois for all the 401(k) contributions they withheld for each hour worked on the employees who volunteered to

participate in the 401(k) plan. Payment shall be received on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

**SECTION 24.** No new funds will be introduced or added during the contract with exception of discussion and a mutually agreed upon 401K plan. Increases for any existing fund, except the Local Betterment of Industry Fund, shall be taken from the existing wage rate. Decreases from any existing fund shall be added to the existing wage rate.

**SECTION 25. PENALTY:** There will be a penalty of one and one-half percent (1½ ) per month on the gross amount of ARTICLE VIII, SECTIONS #15, 16, 17, 18,19, 20, 21, 22, and 23 if the United States Post Office Department postage date is later than the fifteenth (15th) of the month following the month in which the hours were worked.

In case of an error on the total amount of hours worked, total amount of monies paid of any employee deleted from the report, the one and one-half percent (1½) per month shall be charged against the Employer and compounded monthly until paid.

Any and all penalties collected are to be divided equally between Health & Welfare and Local Pension:

A.  If the Employer fails to pay fringe benefits contributions on time to any of the following funds: Health & Welfare, Savings, Pension, and any other plans, trusts, and funds provided for in this Agreement, the employees shall receive full pay for time lost from work while the work stoppage continues. No work stoppage shall be called because of a delinquency in contributions until seventy-two (72) hours after written notice of the claimed delinquency has been mailed by the Union to the Employer at his usual place of business; if the Employer provided the Union with satisfactory evidence of payment, the work stoppage shall not take place.

B.  No employee has any obligation to work while his wages are delinquent and a work stoppage may be called for wage delinquency at any time. Employee must remain on job or in the shop to collect wages for non-payment of benefits.

C.  In the event the Employer delinquency in payment of wages or fringe contributions, the provisions of the no strike clause in this Agreement shall be waived. The rights granted to the employees and union in the event of such delinquency are in addition to any other remedies available under this Agreement or any Trust Agreement intended to require prompt payment of fringe benefit contributions by Employer.

D.  Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his or its obligations to make payments.

**E-FILED**
Tuesday, 03 October, 2006  03:31:28 PM
Clerk, U.S. District Court, ILCD

# RESTATED AGREEMENT AND DECLARATION OF TRUST

## OF THE

# SHEET METAL WORKERS LOCAL #218 HEALTH & WELFARE FUND



EXHIBIT

tabbies

B

## ARTICLE IV

### CONTRIBUTIONS AND COLLECTIONS

Section 4.1 Employer Contributions.

(a)    Each Employer shall make prompt contributions or payments to the Trust
Fund in such amount and under the terms as are provided for in the applicable
collective bargaining agreement in effect from time to time between the
Employer or his bargaining representative and the Union. An Employer may
also be required to make contributions in such amount and under such terms
as such Employer may be obligated, in writing, to make, provided that such
contributions shall be subject to acceptance by the Trustees. The Employer
agrees that such contributions shall constitute an absolute obligation to the
Trust Fund, and such obligation shall not be subject to set-off or counterclaim
which the Employer may have for any liability of the Union or of an
Employee.

(b)    Contributions to the Fund shall be paid to the Trustees or to such depository
as the trustees shall designate, only by check, bank draft, money order or
other recognized written method of transmitting money or its equivalent,
made payable to the order of the Trustees of the Sheet Metal Workers Local
#218 Health and Welfare Fund. The payment of contributions shall be made
periodically at such times as the Trustees shall specify by rules and regulations
or as may be provided in the applicable collective bargaining agreement.

(c)    Each Employer shall be responsible only for the contributions payable by him
on account of Employees covered by him, except as may be otherwise
provided by law. The Association or any other employers association or
group shall not be responsible for the contributions, payment or other
obligations of any other Employer, or otherwise.

Section 4.2 Employee Contributions. Participants (I) who cease to perform work for an

Employer for which work Employer contributions were required to be paid to this Fund as provided

in Section 4.1 of this Article, and (ii) who, at the time they last performed such work, had been

eligible and qualified to receive benefits under the plan of benefits established by the Trustees under

this Fund, and (iii) who are members of such a class of such Participants as to whom the Trustees,

consistent with applicable law, have in their sole discretion determined to provide continued eligibility

15

for benefits of such type and amount and for such period of time and on such terms as the Trustees in their discretion may wish to make available to such class, shall make periodic contributions or payments to the Trust Fund in such amounts and at such times and subject to such conditions, requirements, limitations and rules as the Trustees in their sole discretion may establish and impose with respect to such class of such Participants.

Section 4.3  Receipt of Payment and Other Property of Trust.

The Trustees or such other person or entity designated or appointed by the Trustees in accordance with Section 5.3 of Article V are hereby designated as the persons to receive the payments heretofore or hereafter made to the Trust Fund by the Employers and Employees. The Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same.

Section 4.4  Collection and Enforcement of Payments.  The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Administrative Manager if one has been appointed and when directed by such committee or by the Board of Trustees, shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement.  They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union to take whatever steps it deems necessary and wishes to undertake for such purpose.

Section 4.5  Late Payments.  The Trustees may require the payment by Employers of

16

liquidated damages at the rate of ten percent (10%) of the balance due or as provided in the

applicable collective bargaining agreement or provided in a schedule established by the Trustees and

of other costs and expenses (such as without limitation, attorneys' fees, filing fees and cost of service

of papers and all audit costs incurred by the Trustees and arising out of the collection of such

Employer's delinquent contributions. Non-payment, by any Employer, of any contribution or other

moneys owed to the Fund shall not relieve any other Employer from his or its obligation to make

required payments to the Trust Fund.

Section 4.6 Production of Records. Each Employer shall promptly furnish to the Trustees,

on demand, the names of his Employees, their Social Security numbers, the hours worked by each

Employee and such other information as the Trustees may reasonably require in connection with the

administration of the Trust Fund and for no other purpose. The Trustees and the insurance carrier,

when so authorized by the Trustees, may, by their respective representatives, examine the pertinent

employment and payroll records of each Employer at the Employer's place of business whenever such

examination is deemed necessary or advisable by the Trustees in connection with the proper

administration of the Trust Fund and of the contracts or policies of insurance. The Union shall, upon

the request of the Trustees, promptly furnish information in respect to an Employee's employment

status.

Section 4.7 Conduct of Trust Business. The Trustees shall have general supervision of the

operation of this Trust Fund and shall conduct the business and activities of the Trust Fund in

accordance with the Trust Agreement and applicable law. The Trustees shall hold, manage and

protect the Trust Fund and collect the income therefrom and contributions thereto. The Trustees

may, in the course of conducting the business of the Trust, execute all instruments in the name of the

17

Sheet Metal Workers Local #218 Health and Welfare Fund, which instruments shall be signed by at least one Employer and one Employee Trustee, with the exception of benefit claim checks which any two (2) Trustees may execute; provided, however, any one Trustee may execute legal documents to commence and process law suits to enforce trust collections on behalf of the Trustees.

Section 4.8 Report on Contributions and Production of Records. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Welfare Plan. The Trustees may, on reasonable notice, have an audit made by an independent accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports.

All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the fund forward unless given written authorization by the Administrator. Upon request to destroy said records, or in the absence of said authorization, said records must be kept for 10 years. The Trustees shall require the Employer to designate the classification of all of his employees and if the employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a substantial difference between hours actually worked and an employee's hours reported to the Trust by his Employer, or where the matter has been referred to Fund Counsel for collection or to obtain an audit, regardless of whether the audit discloses a delinquency, the Employer must pay the cost of the audit. Furthermore, where such audit discloses

18

any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of the report forms, signed report forms, or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent a personal liability for owners or partners who are not otherwise incorporated.

In addition, the delinquent contributions shall bear interest up to the prime rate of interest as recognized by bank or such other lawful amount as determined by the Trustees from the due date until totally satisfied.

In the event an Employer party to this Trust Agreement or otherwise bound thereby becomes delinquent in his contributions and the Trustees place the account in the hands of legal counsel for collection, said delinquent Employer shall be liable for reasonable attorney's fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc. "Reasonable attorney's fees" as used herein shall mean: All reasonable attorney's fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

19

## Levinson Simon & Sprung, P.C.
Certified Public Accountants

566 W. Lake St.
Suite 3 West
Chicago, IL 60661-1414
(312) 655-0037
Fax (312) 655-9145

October 19, 2005

Trustees Sheet Metal Workers Local 218
Fringe Benefit Funds
2855 Via Verde
Springfield, IL 62703

Re:    C & K Mechanical Contractors, Inc.
       Case # 218-0405-69

Gentlemen:

In accordance with your instructions, we have performed certain agreed upon procedures to the payroll records presented for our inspection by the above mentioned employer. The purpose of the inspection was to determine the accuracy of the employer's monthly contributions to the Sheet Metal Workers Local 218 Fringe Benefit Funds for the period May 1, 2002 through June 30, 2005. This agreed upon procedure engagement was performed in accordance with the standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the Sheet Metal Workers Local 218 Fringe Benefit Funds.

**This audit should be considered an exit audit in accordance with instructions from the Fund Office.**

Please note that the contractor was unable to obtain all quarterly payroll tax returns for the audit period.

Attached hereto are yearly schedules showing the detail of the under-reported hours and computation of the amounts due to the Funds. The findings consist of unreported and under-reported hours of individuals on payroll doing covered work.

Our examinations indicated that the employer owes the following amounts for the period audited:

|                         | Amount Due   |
|-------------------------|--------------|
| Apprenticeship Fund     | $   1,300.90 |
| Nat'l & Local Industry  | 398.63       |
| Local Pension           | 13,308.54    |
| Welfare Fund            | 16,789.45    |
| Total                   | $ 31,797.52  |





Trustees Sheet Metal Workers Local 218
Fringe Benefit Funds
October 19, 2005
Page Two
Case # 218-0405-69

We were not engaged to, and did not, perform an examination, the objective of which would be the expression of an opinion on the accompanying report. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

We shall be pleased to furnish any additional information desired and have attached our bill for services.

Very truly yours,


LEVINSON SIMON & SPRUNG P.C.
Howard B. Levinson, CPA, MBA

HBL/lab

Enclosures

# Levinson Simon & Sprung, P.C.
## Summary Report
### Report Date: 10/19/2005

Sheet Metal Workers Local 218
C & K MECHANICAL CONTRACTORS, INC.
    Case #:  218-0405-69
    Audit Period:  5/1/2002 thru 8/31/2005

| Benefit | Year | Amount | Totals |
|---|---|---|---|
| Apprenticeship Fund | 2003 | 54.98 | |
| | 2004 | 734.24 | |
| | 2005 | 511.68 | |
| | | | 1,300.90 |
| National & Local Ind | 2003 | 21.23 | |
| | 2004 | 229.80 | |
| | 2005 | 147.60 | |
| | | | 398.63 |
| Pension, Local | 2003 | 659.78 | |
| | 2004 | 7,611.24 | |
| | 2005 | 5,037.52 | |
| | | | 13,308.54 |
| Welfare Fund | 2003 | 774.01 | |
| | 2004 | 9,558.64 | |
| | 2005 | 6,456.80 | |
| | | | 16,789.45 |
| | | | 31,797.51 |

### Summary by Year

| | | |
|---|---|---|
| | 2003 | 1,510.00 |
| | 2004 | 18,133.92 |
| | 2005 | 12,153.60 |
| | | 31,797.51 |

Manager: Betar, Leia
Auditor: Vargas, Benjamin

Levinson Simon & Sprung, P.C.
**Detail Report**
**Report Date: 10/19/2005**

Employees

Sheet Metal Workers Local 218
C & K MECHANICAL CONTRACTORS, INC.
Case #: 218-0405-69          Year: 2005
Contract: 218C Journeymen

**Contributions computed by Amount per Hour**

| Contribution Rates | | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Regular** | | | | | | | | | | | | | |
| Apprenticeship Fund | | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 | .5200 |
| National & Local Ind | | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 |
| Pension, Local | | 5.0700 | 5.0700 | 5.0700 | 5.0700 | 5.0700 | 5.3900 | 5.3900 | 5.3900 | 5.3900 | 5.3900 | 5.3900 | 5.3900 |
| Welfare Fund | | 6.5000 | 6.5000 | 6.5000 | 6.5000 | 6.5000 | 6.9000 | 6.9000 | 6.9000 | 6.9000 | 6.9000 | 6.9000 | 6.9000 |
| | | 12.2400 | 12.2400 | 12.2400 | 12.2400 | 12.2400 | 12.9600 | 12.9600 | 12.9600 | 12.9600 | 12.9600 | 12.9600 | 12.9600 |
| **Contributions** | Total | January | February | March | April | May | June | July | August | September | October | November | December |
| Apprenticeship Fund | 511.68 | 79.04 | 83.20 | 83.20 | 104.00 | 83.20 | 79.04 | | | | | | |
| National & Local Ind | 147.60 | 22.80 | 24.00 | 24.00 | 30.00 | 24.00 | 22.80 | | | | | | |
| Pension, Local | 5,037.52 | 770.64 | 811.20 | 811.20 | 1,014.00 | 811.20 | 819.28 | | | | | | |
| Welfare Fund | 6,456.80 | 988.00 | 1,040.00 | 1,040.00 | 1,300.00 | 1,040.00 | 1,048.80 | | | | | | |
| | 12,153.60 | 1,860.48 | 1,958.40 | 1,958.40 | 2,448.00 | 1,958.40 | 1,969.92 | | | | | | |

Levinson Simon & Sprung, P.C.
**Detail Report**
**Report Date: 10/19/2005**

Sheet Metal Workers Local 218
C & K MECHANICAL CONTRACTORS, INC.
Case #: 218-0405-69          Year: 2005
Contract: 218C Journeymen

Employees

| | | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Hours** | | | | | | | | | | | | | | |
| **Individuals** | | | | | | | | | | | | | | |
| Bensyl, Ken | 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 | 984.000 | 152.000 | 160.000 | 160.000 | 200.000 | 160.000 | 152.000 | | | | | | |
| | *Total Individuals* | 984.000 | 152.000 | 160.000 | 160.000 | 200.000 | 160.000 | 152.000 | | | | | | |
| | | 984.000 | 152.000 | 160.000 | 160.000 | 200.000 | 160.000 | 152.000 | | | | | | |

| | | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Contributions** | | | | | | | | | | | | | | |
| **Individuals** | | | | | | | | | | | | | | |
| Bensyl, Ken | 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 | 12,153.60 | 1,860.48 | 1,958.40 | 1,958.40 | 2,448.00 | 1,958.40 | 1,969.92 | | | | | | |
| | *Total Individuals* | 12,153.60 | 1,860.48 | 1,958.40 | 1,958.40 | 2,448.00 | 1,958.40 | 1,969.92 | | | | | | |
| | | 12,153.60 | 1,860.48 | 1,958.40 | 1,958.40 | 2,448.00 | 1,958.40 | 1,969.92 | | | | | | |

Contributions computed by Amount per Hour

Levinson Simon & Sprung, P.C.
**Detail Report**
**Report Date: 10/19/2005**

Sheet Metal Workers Local 218
C & K MECHANICAL CONTRACTORS, INC.
Case #: 218-0405-69        Year: 2004
Contract: 218C Journeymen

**Contributions computed by Amount per Hour**

| Contribution Rates | | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular | | | | | | | | | | | | | |
| Apprenticeship Fund | | .4200 | .4200 | .4200 | .4200 | .4200 | .4200 | .4200 | .5200 | .5200 | .5200 | .5200 | .5200 |
| National & Local Ind | | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 |
| Pension, Local | | 4.8200 | 4.8200 | 4.8200 | 4.8200 | 4.8200 | 4.8200 | 4.8200 | 5.0700 | 5.0700 | 5.0700 | 5.0700 | 5.0700 |
| Welfare Fund | | 5.8600 | 5.8600 | 5.8600 | 5.8600 | 5.8600 | 5.8600 | 5.8600 | 6.5000 | 6.5000 | 6.5000 | 6.5000 | 6.5000 |
| | | 11.2500 | 11.2500 | 11.2500 | 11.2500 | 11.2500 | 11.2500 | 11.2500 | 12.2400 | 12.2400 | 12.2400 | 12.2400 | 12.2400 |
| **Contributions** | **Total** | January | February | March | April | May | June | July | August | September | October | November | December |
| Apprenticeship Fund | 734.24 | 80.64 | 70.56 | | | 19.32 | 7.56 | 84.00 | 90.48 | 79.04 | 119.60 | 79.04 | 104.00 |
| National & Local Ind | 229.80 | 28.80 | 25.20 | | | 6.90 | 2.70 | 30.00 | 26.10 | 22.80 | 34.50 | 22.80 | 30.00 |
| Pension, Local | 7,611.24 | 925.44 | 809.76 | | | 221.72 | 86.76 | 964.00 | 882.18 | 770.64 | 1,166.10 | 770.64 | 1,014.00 |
| Welfare Fund | 9,558.64 | 1,125.12 | 984.48 | | | 269.56 | 105.48 | 1,172.00 | 1,131.00 | 988.00 | 1,495.00 | 988.00 | 1,300.00 |
| | 18,133.92 | 2,160.00 | 1,890.00 | | | 517.50 | 202.50 | 2,250.00 | 2,129.76 | 1,860.48 | 2,815.20 | 1,860.48 | 2,448.00 |

## Levinson Simon & Sprung, P.C.
## Detail Report
## Report Date: 10/19/2005

Employees

Sheet Metal Workers Local 218
C & K MECHANICAL CONTRACTORS, INC.
Case #: 218-0405-69          Year: 2004
Contract: 218C Journeymen

| | | | | | | | Contributions computed by Amount per Hour | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Total | January | February | March | April | May | June | July | August | September | October | November | December |
| **Hours** | | | | | | | | | | | | | | |
| **Individuals** | | | | | | | | | | | | | | |
| Bensyl, Ken | 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 | 1,144.000 | 40.000 | | | | 32.000 | 8.000 | 200.000 | 160.000 | 152.000 | 200.000 | 152.000 | 200.000 |
| Blackwell, William | 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 | 8.000 | 8.000 | | | | | | | | | | | |
| Elmore, Tony | 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 | 16.000 | | 16.000 | | | | | | | | | | |
| Reynold Jeff | 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 | 68.000 | | | | | 14.000 | 10.000 | | 14.000 | | 30.000 | | |
| Scanlon, Travis | 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 | 288.000 | 144.000 | 144.000 | | | | | | | | | | |
| Thomas, Scott | 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 | 8.000 | | 8.000 | | | | | | | | | | |
| *Total Individuals* | | 1,532.000 | 192.000 | 168.000 | | | 46.000 | 18.000 | 200.000 | 174.000 | 152.000 | 230.000 | 152.000 | 200.000 |
| | | 1,532.000 | 192.000 | 168.000 | | | 46.000 | 18.000 | 200.000 | 174.000 | 152.000 | 230.000 | 152.000 | 200.000 |

| **Contributions** | | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Individuals** | | | | | | | | | | | | | | |
| Bensyl, Ken | 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 | 13,725.36 | 450.00 | | | | 360.00 | 90.00 | 2,250.00 | 1,958.40 | 1,860.48 | 2,448.00 | 1,860.48 | 2,448.00 |
| Blackwell, William | 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 | 90.00 | 90.00 | | | | | | | | | | | |
| Elmore, Tony | 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 | 180.00 | | 180.00 | | | | | | | | | | |
| Reynold Jeff | 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 | 808.56 | | | | | 157.50 | 112.50 | | 171.36 | | 367.20 | | |
| Scanlon, Travis | 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 | 3,240.00 | 1,620.00 | 1,620.00 | | | | | | | | | | |
| Thomas, Scott | 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 | 90.00 | | 90.00 | | | | | | | | | | |
| *Total Individuals* | | 18,133.92 | 2,160.00 | 1,890.00 | | | 517.50 | 202.50 | 2,250.00 | 2,129.76 | 1,860.48 | 2,815.20 | 1,860.48 | 2,448.00 |
| | | 18,133.92 | 2,160.00 | 1,890.00 | | | 517.50 | 202.50 | 2,250.00 | 2,129.76 | 1,860.48 | 2,815.20 | 1,860.48 | 2,448.00 |

**Levinson Simon & Sprung, P.C.**

**Detail Report**

**Report Date: 10/19/2005**

Sheet Metal Workers Local 218

C & K MECHANICAL CONTRACTORS, INC.

Case #: 218-0405-69          Year: 2003

Contract: 218C Journeymen

Employees

Contributions computed by Amount per Hour

| Contribution Rates | | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular | | | | | | | | | | | | | |
| Apprenticeship Fund | | .3700 | .3700 | .3700 | .3700 | .3700 | .3700 | .3700 | .4200 | .4200 | .4200 | .4200 | .4200 |
| National & Local Ind | | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 | .1500 |
| Pension, Local | | 4.5700 | 4.5700 | 4.5700 | 4.5700 | 4.5700 | 4.5700 | 4.5700 | 4.8200 | 4.8200 | 4.8200 | 4.8200 | 4.8200 |
| Welfare Fund | | 5.2400 | 5.2400 | 5.2400 | 5.2400 | 5.2400 | 5.2400 | 5.2400 | 5.8600 | 5.8600 | 5.8600 | 5.8600 | 5.8600 |
| | | 10.3300 | 10.3300 | 10.3300 | 10.3300 | 10.3300 | 10.3300 | 10.3300 | 11.2500 | 11.2500 | 11.2500 | 11.2500 | 11.2500 |

| Contributions | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apprenticeship Fund | 54.98 | | 32.56 | | | | | .37 | | .21 | 7.56 | 10.08 | 4.20 |
| National & Local Ind | 21.23 | | 13.20 | | | | | .15 | | .07 | 2.70 | 3.60 | 1.50 |
| Pension, Local | 659.78 | | 402.16 | | | | | 4.57 | | 2.41 | 86.76 | 115.68 | 48.20 |
| Welfare Fund | 774.01 | | 461.12 | | | | | 5.24 | | 2.93 | 105.48 | 140.64 | 58.60 |
| | 1,509.99 | | 909.04 | | | | | 10.33 | | 5.63 | 202.50 | 270.00 | 112.50 |

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 10/19/2005**

Employees

Sheet Metal Workers Local 218
C & K MECHANICAL CONTRACTORS, INC.
Case #: 218-0405-69          Year: 2003
Contract: 218C Journeymen

| | | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Hours** | | | | | | | | | | | | | | |
| **Individuals** | | | | | | | | | | | | | | |
| Bensyl, Ken | 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 | 9.000 | | | | | | | | | | 9.000 | | |
| Blackwell, William | 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 | .500 | | | | | | | | | | | | 500 |
| Reynold Jeff | 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 | 127.500 | | 88.000 | | | | | 1.000 | | .500 | 9.000 | 24.000 | 5.000 |
| Scanlon, Travis | 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 | 4.500 | | | | | | | | | | | | 4.500 |
| *Total Individuals* | | 141.500 | | 88.000 | | | | | 1.000 | | .500 | 18.000 | 24.000 | 10.000 |
| | | 141.500 | | 88.000 | | | | | 1.000 | | .500 | 18.000 | 24.000 | 10.000 |

| | | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Contributions** | | | | | | | | | | | | | | |
| **Individuals** | | | | | | | | | | | | | | |
| Bensyl, Ken | 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 | 101.25 | | | | | | | | | | 101.25 | | |
| Blackwell, William | 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 | 5.62 | | | | | | | | | | | | 5.62 |
| Reynold Jeff | 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 | 1,352.49 | | 909.04 | | | | | 10.33 | | 5.62 | 101.25 | 270.00 | 56.25 |
| Scanlon, Travis | 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 | 50.62 | | | | | | | | | | | | 50.62 |
| *Total Individuals* | | 1,509.98 | | 909.04 | | | | | 10.33 | | 5.62 | 202.50 | 270.00 | 112.49 |
| | | 1,509.98 | | 909.04 | | | | | 10.33 | | 5.62 | 202.50 | 270.00 | 112.49 |

Contributions computed by Amount per Hour

Date: _9/21/05_
Case #: _218 040569_

## BUSINESS INFORMATION SHEET

1. Firm Name: C & K MECHANICAL CONTRACTORS.

2. The form of your business is:

    X Corporation                    _____ Sole Proprietorship

    ___ Partnership                  _____ Other

3. List the **NAMES AND TITLES OF ALL OFFICERS, OWNERS AND/OR PARTNERS** of your business, or any person that has total or partial direction in your business. Also include the % of the ownership for each.

    SUSAN BENSYL-P  51 %

    KENNETH BENSYL-VP 49%

4. Business Address: 902. SURREY CT  MAHOMET, ILL

5. Phone Number: 217-586-3632

6. Fax Number: 217-586.2595

7. E-Mail Address: K. BENSYL@MCHSI.COM

8. Residence Address: 902. SURREY CT  MAHOMET, ILL

9. Residence Phone: 217-586-85219

10. Insurance Company: CENTRAL INSURANCE

11. Insurance Agent: _____

12. Workmen's Compensation Policy #: _____

13. Illinois State Unemployment #: 0552385654

14. Do you have a Bond? YES _____ $ _____ (Please attach)    NO X

15. Bank Name: FIRST FEDERAL

16. Bank Account #: 5000 174706

17. Do the officers contribute on themselves to this trade or any other?   X YES  _____ NO

18. List name of other trade: _____

19. Are the officers of this company affiliated with any other company? _____ YES    X NO

20. List name of other company. _____

21. Is your company still in business?  _____ YES  _____ NO*

22. If NO:                    1. Date business ceased: _____

*THIS IS FOR THE AUDITOR TO FILL OUT- PLEASE LEAVE BLANK*

Total # Employees_____    Average # Employees Reviewed/Monthly_____

# Levinson, Simon & Sprung, P.C.
Certified Public Accountants

566 W. Lake Street · Suite 3W · Chicago, IL 60661-1414
(312) 655-0037 · FAX (312) 655-9145

INVOICE NO.
8528

## INVOICE

October 19, 2005

Trusteed Sheet Metal Workers Local 218
Fringe Benefit Funds
2855 Via Verde
Springfield, Illinois 62703

LEVINSON SIMON & SPRUNG, P.C.
CERTIFIED PUBLIC ACCOUNTANTS
566 W. LAKE ST. STE. 3 WEST
CHICAGO, IL 60661-1414
COPY

RE:  C & K MECHANICAL CONTRACTORS, INC.
Case # 218-0405-69
Acct #

| | | | | |
|---|---|---|---|---|
| Field Work & Report Preparation | 14.25 @ | $ 55.00 | $ | 783.75 |
| Supervision & Review | 0.25 @ | 100.00 | | 25.00 |
| Clerical | 2.00 @ | 30.00 | | 60.00 |
| | | **Sub-Total** | | 868.75 |
| Mileage | 91 Miles @ 0.4850 | | | 44.13 |
| Out -of-Town Travel | | | | 70.58 |
| | | **Total** | $ | 983.47 |

**E-FILED**
Tuesday, 03 October, 2006  03:31:59 PM
Clerk, U.S. District Court, ILCD

CAVANAGH & O'HARA
Attorneys At Law

1609 North Illinois Street
Swansea, Illinois 62226
Telephone (618) 222-5945
Fax (618) 222-6755

FPP  12

William K. Cavanagh
Michael W. O'Hara
Patrick J. O'Hara
James P. Moody

John T. Long
Britt W. Sowle

Of Counsel
Michael J. Masterson, P.C.

*Springfield Office*
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705
Telephone (217) 544-1771
Telefax (217) 544-9894

*Chicago Office*
20 South Clark
Suite 3000
Chicago, Illinois 60603
Telephone (312) 624-3141
Telefax (312) 855-0445

March 20, 2006

## *SECOND AND FINAL NOTICE*

*Via Certified and Regular Mail*
C&K Mechanical Contractors, Inc.
Attn: Susan Bensyl
902 Surrey Court
Mahomet, Illinois 61853

**RE:     Sheet Metal Workers #218 Fringe Benefit Funds**
**Payroll Compliance Audit of C&K Mechanical Contractors, Inc.**
**Period of May 1, 2002 through June 30, 2005**

Dear Ms. Bensyl:

Enclosed please find a copy of the audit performed by Levinson, Simon & Sprung, P.C. with respect to the above-referenced matter. As you will note, based upon payroll records presented by C&K Mechanical Contractors, Inc., the report disclosed that **$31,797.52** is due and owing from your company to the Sheet Metal Workers #218 Fringe Benefit Funds for outstanding fringe benefit contribution payments.

Due to the determined delinquency being more than $1,000.00, you are responsible for the audit costs of **$983.47**. Secondly, you are also responsible for liquidated damages which amount to ten percent (10%) of the determined delinquency or **$3,179.75**.

In order that the applicable participants may be credited by the Fund with their proper hours of contributions, the Trustees require that you pay the total amount due of **$35,960.74** as referenced above *immediately*. Please transmit payment to our office made payable to Sheet Metal Workers #218 Fringe Benefit Funds.



EXHIBIT
D

C&K Mechanical Contractors, Inc.
March 20, 2006
Page 2

Should you have any challenges to the results of the audit, please put your challenges in writing and send them to:

CAVANAGH & O'HARA
Att: Tami Williams, Paralegal
1609 North Illinois Street
Swansea, Illinois 62226

Your challenges will then be forwarded to the Delinquency Committee and Levinson, Simon and Sprung, P.C. for their review and consideration. Please be sure to include any documentation supporting your position with your challenges. You also have the option to appear before the Sheet Metal Workers #218 Board of Trustees at their quarterly meeting in order to present your challenges directly. If you choose to appear before the Board of Trustees at the quarterly meeting, please let me know as soon as possible.

If you do not comply with any of the above-mentioned procedures or submit written challenges, along with documentation **within seven (7) days** of receipt of this correspondence, this office will then have no alternative but to immediately file, with the United States District Court, our Complaint against your company for the full amount due and owing your client including attorney fees, court costs and sheriff fees.

Very truly yours,

Britt W. Sowle

Enclosure as indicated
cc:     Kay Bauer, Century Planners
        Paul Hayes, Sheet Metal Workers #218

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C&K Mechanical Contracting
Attn: Susan Bensyl
902 Surray Ct.
Mahomet, IL 61853

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☒ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
KENNETH W BENSYL                 3-24-06

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number          7005 1160 0000 1907 2595
   (Transfer from service label)

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-154

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $4.64 |

3/20/04
Postmark
Here

SMW218

7005 1160 0000 1907 2595

Sent To C&K Mechanical Contractors
Street, Apt. No. or PO Box No. 902 Surrey Ct
City, State, ZIP+4 Mahomet, IL 61853

PS Form 3800, June 2002          See Reverse for Instructions

## CAVANAGH & O'HARA
Attorneys At Law

1609 North Illinois Street
Swansea, Illinois 62226
Telephone (618) 222-5945
Fax (618) 222-6755

FPP-⬡⬡⬡-12

William K. Cavanagh
Michael W. O'Hara
Patrick J. O'Hara
James P. Moody

C♈

John T. Long
Britt W. Sowle

C♈

Of Counsel
Michael J. Masterson, P.C.

*Springfield Office*
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705
Telephone (217) 544-1771
Telefax (217) 544-9894

C♈

*Chicago Office*
20 South Clark
Suite 3000
Chicago, Illinois 60603
Telephone (312) 624-3141
Telefax (312) 855-0445

November 1, 2005

### *Via Certified Mail and Regular Mail*
ATTN: Susan Bensyl
C & K Mechanical Contractors, Inc.
902 Surrey Court
Mahomet, Illinois 61853

> **RE:** **Sheet Metal Workers Local #218 Fringe Benefit Funds**
> **Payroll Compliance Audit of C& K Mechanical Contractors, Inc.**
> **Period of May 1, 2002 through June 30, 2005**

Dear Ms. Bensyl:

Enclosed please find a copy of the audit performed by Levinson Simon & Sprung, P.C. with respect to the above-referenced matter. As you will note, based upon payroll records presented by C & K Mechanical Contracotrs, Inc. the report disclosed that $31,797.52 is due and owing from your company to the Sheet Metal Workers Local #218 Fringe Benefit Funds for outstanding fringe benefit contribution payments.

Due to the determined delinquency being more than $1,000.00, you are responsible for the audit costs of $983.47. Secondly, you are also responsible for liquidated damages which amount to ten (10%) of the determined delinquency or $3,179.75.

In order that the applicable participants may be credited by the Fund with their proper hours of contributions, the Trustees require that you pay the total amount due of **$35,960.74** as referenced above immediately. Please transmit payment to our office made payable to Sheet Metal Workers #218 Fringe Benefit Funds.

Should you have any challenges to the results of the audit, please put your challenges in writing and send them to:

> Cavanagh & O'Hara
> ATTN: Tami Williams, Paralegal
> 1609 North Illinois Street
> Swansea, Illinois 62226

Your challenges will then be forwarded to the Delinquency Committee and Levinson Simon & Sprung, P.C. for their review and consideration. Please be sure to include any documentation supporting your position with your challenges. You also have the option to appear before the Sheet Metal Workers Local #218 Board of Trustees at their quarterly meeting in order to present your challenges directly. If you choose to appear before the Board of Trustees at the quarterly meeting, please let me know as soon as possible.

If you do not comply with any of the above-mentioned procedures or submit written challenges, along with documentation **within fifteen (15) days** of receipt of this correspondence, this office will then have no alternative but to immediately file, with the United States District Court, our Complaint against your company for the full amount due and owing our client including attorney's fees, court costs and sheriff fees.

Very truly yours,

Britt W. Sowle

Enclosure as indicated
cc: Kay Bauer, Century Planners
    Paul Hayes, Sheet Metal Workers Local 218

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark 11-14-05

SMW218

Sent To  C&C Mechanical Cont.
Street, Apt. No. or PO Box No. 902 Surrey Ct.
City, State, ZIP+4  Mahomet IL 61853

7005 0390 0002 2978 1081

PS Form 3800, June 2002          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C&C Mechanical Contr.
Attn: Susan Bensyl
902 Surrey Court
Mahomet IL 61853

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☒ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
KENNETH W BENCYL     1-3-05

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☒ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service)   7005 0390 0002 2978 1081

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-154

**E-FILED**
Tuesday, 03 October, 2006  03:32:19 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 218,<br>SHEET METAL WORKERS LOCAL 218<br>PENSION FUND, SHEET METAL WORKERS<br>NATIONAL BENEFIT FUNDS, SHEET<br>METAL WORKERS LOCAL 218<br>APPRENTICESHIP  FUND, SHEET METAL<br>WORKERS HEALTH AND WELFARE FUND,<br>SHEET METAL WORKERS LOCAL 218<br>FRINGE BENEFIT FUNDS, SHEET METAL<br>WORKERS LOCAL 218 INDUSTRY FUND<br><br>       Plaintiffs,<br><br>vs.<br><br>C&K MECHANICAL CONTRACTORS, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No.<br>)<br>)<br>)<br>) |

## AFFIDAVIT IN SUPPORT OF ATTORNEYS FEES

BRITT W. SOWLE, being first duly sworn, on oath deposes and states that the following

itemization accurately reflects the time expended with respect to the above-captioned matter:

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 11/1/05 | Received and reviewed correspondence and completed audit from Levinson, Simon and Sprung, disclosing audit liability due and owing. Preparation of letter to employer requesting payment of audit liability due. | 1.00 |
| 11/4/05 | Telephone conference with Mr. Bensyl regarding audit liability due and challenges to same. Review file. | 0.30 |
| 12/5/05 | Telephone conference with Ken Bensyl regarding additional time to submit challenges to payroll audit. Review file. | 0.25 |
| 3/20/06 | Preparation of second and final demand to employer for | |



EXHIBIT

E

|  | payment of audit liability due and owing via certified and regular mail. | 0.40 |
|---|---|---|
| 3/22/06 | Telephone conference with Ken Bensyl regarding audit liability due and audit challenges. Review file. | 0.40 |
| 4/4/06 | Telephone conference with Ken Bensyl regarding audit challenges forwarded. Review file. | 0.40 |
| 7/19/06 | Telephone conference with Ken Bensyl regarding audit challenges submitted and request for supporting documentation. | .25 |
| 7/19/06 | Additional telephone conference with Ken Bensyl regarding audit challenges. | .40 |
| 9/30/06 | Review file. Research Illinois Secretary of State to obtain corporate information. Telephone conference with Champaign County Sheriff regarding service of Summons. Preparation of draft Complaint, Summons, Certificate of Service, Civil Cover Sheet, and Affidavit in Support of Attorney Fees. | 1.80 |
| 10/02/06 | Finalize Complaint and other initial pleadings. Assemble exhibits. File same with U.S. District Court via electronic filing. Preparation of correspondence to U.S. District Court enclosing our filing fee. | 1.00 |

|  |  |  |
|---|---|---|
|  | TOTAL HOURS 6.20 X $185.00 PER HOUR = | $1,147.00 |
| 7/13/06 | U.S. District Court - filing fee | $ 350.00 |
| 7/13/06 | Champaign Sheriff Fees | $  39.00 |
|  | **_TOTAL FEES AND COSTS INCURRED TO DATE_**: | $ 1,537.00 |

Further, Affiant sayeth naught

s/ Britt W. Sowle

BRITT W. SOWLE
**CAVANAGH & O'HARA**
**Attorneys for Plaintiffs**
1609 North Illinois Street
Swansea, Illinois 62226
Telephone:    (618) 222-5945
Facsimile:    (618) 222-6755
britt@cavanagh-ohara.com

Subscribed and sworn to before me this ___ day of October 2006.

_____
Notary Public

```
"OFFICIAL SEAL"
MARY FERGUSON.
NOTARY PUBLIC—STATE OF ILLINOIS
MY COMMISSION EXPIRES APRIL 2, 2009
```